Good afternoon, your honors. My name is Norman Shaw, and I'm here for appellant me. Right, but you're also a lawyer too, correct? That's correct. I would like to reserve three minutes for rebuttal. Okay, go ahead. If I don't use seven minutes, do I have the rest for rebuttal? Yes. Okay. I'm here to ask you to allow my case to move forward to trial on the merits of a Truth in Landing Act rescission. I did not receive the required disclosure statements, and the particular document is called a notice of the right to rescind. Contrary to what defense said, that I got one filled out copy, I got no filled out copy. Let me tell you what's on my mind so you can educate me and educate me out of it if I'm mistaken. I look at the complaint and it alleges misconduct entirely by Washington Mutual, not giving you the proper number of copies or informing you of the things it had to inform you of, the dates and so forth. But it's all misconduct by Washington Mutual. And then I look at language in this case that we have to follow, Benson, and it says plaintiff's complaints are based almost exclusively on alleged malfeasance by Washington Mutual. They argue that J.P. Morgan is liable because it assumed Wamuu's liabilities. By relying on Wamuu's alleged wrongdoing, plaintiff's claims plainly relate to an act or omission of a depository institution for which the FDIC has been appointed receiver. And then I look at this language in Rundgren v. Washington Mutual, where it says a claimant cannot circumvent the exhaustion requirement by suing the purchasing bank based on the conduct of the failed institution, where a claim is functionally, albeit not formally, against the depository for which the FDIC is receiver. It's a claim within the meaning of the FOREA administrative claims process. And I look at those two things and I think this is a claim entirely based on Washington Mutual's misconduct. The FDIC or any federal institution here is not a receiver for any other bank. So if it was some other bank's misconduct, then they couldn't do anything about it. But it is a receiver for Washington Mutual. And so I don't understand how you can get around those two cases on this complaint. Help me. Well, Judge Seabright in Hawaii, in the Rundgren lower court district court case, provided an excellent analysis of why the TILA rescission is not subject to FIREA exhaustion. And the reason why is because the statutory requirement of TILA requires the borrower to rescind against a current holder. Nobody else can rescind. Now, there's been, you know, all this argument and language about going to the FDIC because the FDIC took over Washington Mutual. But this lawsuit is not against Washington Mutual. This lawsuit is against a current holder, Bank of America or U.S. Bank. Well, you'd like to be able to rescind, as you call it, with somebody else. But the misconduct is entirely Washington Mutual's. But that's right. That's where FIREA and TILA conflict. Well, here's what I understand your argument to be. That your argument is that regardless of what the statute says, I don't know if we say FIREA or whatever, exhaustion only applies to claims that are, quote, susceptible of resolution, unquote, through the FDIC's claims procedure. And that caveat applies in two ways here. First, your TILA rescission claim isn't susceptible of resolution through the FDIC claims procedure because your home loan was never in FDIC receivership. Second, TILA rescission claims are always against the current loan holder. Either way, the FDIC never could have resolved your claim. So that's why exhaustion doesn't apply. That's how I understand your argument. I'm not saying I agree with it. But I'm just saying that's what I understand your argument to be. Am I right? That's correct. So have we ever specifically held that the plain text of FIREA does not apply to claims that are not susceptible to resolution through the claims procedure? Yes, in Benson. Well, in Benson and Rundgren, didn't we eschew the notion that there could be any exceptions to the plain text of the statute, which states that any act or omission alleged against a failed bank must, underscore, must be exhausted? But you can't exhaust it. Now, see, that's what's been happening. And so people, logically, you say, how can the FDIC rescind a loan when they don't own it? How can they do that? Logically, you say that to yourself as an everyday person. But this has never happened. And that's why I wanted discovery down below to find out what the FDIC has done. And have you guys ever rescinded a loan? But the lower court judge would not let me have discovery. And what I did is I sent a letter to the FDIC, and I said, please help me with this rescission. The FDIC sent me a letter back, said, we can't. We don't own the loan. I looked at the letters, and what the letter says is that WAMU didn't do what it should have when you borrowed the money from them. And then it said the loan was sold off to LaSalle Bank or Bank of America, and you're asking FDIC to assist you with my rescission against the cardholder or any other entity FDIC thinks is appropriate. So the FDIC wrote me back and said, LaSalle is not an FDIC receivership, so we don't have the capacity to transact on behalf of LaSalle Bank. And you can contact, or we suggest that you contact the successor, Bank of America, directly. It didn't say that they couldn't do anything about anything, no matter what the claim was. All they said was they don't have the capacity to act on behalf of this new bank that isn't in receivership. Right, the bank that has the loan. Well, how does that offset that material from our previous case that says if it's all about, if the case is all about misconduct by the bank that the FDIC did take into receivership, you go to the FDIC? Because the FDIC said they can't do anything because the person that owns a loan, the successor in interest, the current holder, is not in receivership. And so we don't have any authority. We can't rescind a loan that LaSalle Bank of America owns. Well, why don't we, you're down to one minute and 25 seconds or whatever. Why don't you have a seat, we'll hear from the other side, and I'll give you two minutes rebuttal. Okay, thank you. Okay, so that way we can see what the argument is on the other side. Thank you, Your Honor. Thank you. Judge Callahan, if I could just start with the way you mentioned. Do you want to tell us your name? Sorry, Alan Schoenfeld. I'm here for Eppley. Okay. Judge Callahan, I want to start with your framing that Mr. Shaw's argument is that his claim is insusceptible to administration by the FDIC because, one, it didn't pass through the FDIC receivership because it had been securitized, and, two, Taylor rescission claims are brought as against the assignee. And as Judge Kleinfeld pointed out, I think Benson and Rundgren dispose of both of those claims. With respect to the issue about it not being in the FDIC receivership. Well, it's a little murky. I mean, we kind of, there is some loose language that floats around about this susceptible of resolution, you know, whether you go with the plain text or what does this susceptible of resolution mean. And so maybe you can help me and tell me what he should have done to exhaust, to give him a foot, you know, to allow him to be on federal court. Sure. And for that purpose, I would point you to the district court's decision in Long, which Mr. Shaw relies on, the District of Massachusetts decision, where the borrower went to the FDIC, grieved their claim as against WAMU. The FDIC denied the claim, and they then sued both WAMU and JPMorgan Chase in a Taylor rescission action. And so that is, I think, the paradigm of what a party is expected to do for this process. But to go to your question about what it means to have a claim that's susceptible to resolution, all it means is that the FDIC is able to administer the claim in the process. And in this case. Well, if they don't have the note, can they do anything? I think that's what he's trying to say. I mean, it would be sort of like if you come to court, but I don't have your file. I'm going to tell you you can't come to court today. I apologize for interrupting you. I think that's the difference between Romanet 1 and Romanet 2 in FIREA. So Romanet 1 talks about claims as against the assets of the failed depository institution. So you're making claims about assets that the FDIC has in its receivership to dispose of. D2 goes far broader. It says any claim relating to any act or omission of the failed bank. And this court put it, I think, particularly well in Benson, where at 1212 it says, that provision distinguishes claims on their factual bases rather than on the identity of the defendant. It asks whether claims relate to any act or omission of a failed institution or the FDIC. Notably, the provision does not make any distinction based on the identity of the party from whom relief is sought. And I think the same language disposes of Mr. Shaw's argument about being an assignee. Sure, he could bring his, or he must bring his, Taylor rescission claim against the assignee, but that doesn't preclude application of FIREA's exhaustion requirement with respect to a claim that also relates to the act or omission of a failed bank. And if you look- Can I ask you about the ROSA case? Because the ROSA court held that the claimants were exempt from exhaustion because their demand for an injunction to prevent their pension plan's termination was not susceptible of resolution under the FIREA claims procedure. In other words, it would have been pointless for them to file their claims administratively because the receiver for the failed bank lacked authority to grant the request of relief. Assuming the truth of Mr. Shaw's contention that the FDIC could not have resolved his claim, why is his case different than ROSA? I have to confess, I don't remember the specific facts of ROSA. I remember it being an incredibly confusing receivership. I think this case is no different from Rungrin, which also rose from MWAMU and JPMorgan Chase, and Benson, which also did, as well as Kelly and Carmichael and Patalo. What about Wilner? Wilner, I think, is on all fours with this case as well. There, that was- That's Fourth Circuit, right? Fourth Circuit, correct. And just to go back to your point previously- So if we followed Wilner, how would we resolve this case? So I think Wilner most neatly disposes of Mr. Shaw's claim that an asset that was sold pre-receivership isn't subject to the FIREA exhaustion requirement. There, it was a MWAMU-originated mortgage that, like Mr. Shaw's loan, had been securitized before MWAMU failed. And then MWAMU failed, and the Wilners wanted what is the equivalent of TILA rescission. They wanted a declaration that JPMorgan Chase could not foreclose on their home and a declaration that the mortgage was void. And the Fourth Circuit said, all of your allegations concern alleged misconduct by MWAMU, and you are required to exhaust your claims. And I think this is implied, not explicitly stated, even though- No, I'm- Oh, go ahead. No, even though the relief you're seeking is as against JPMorgan Chase, which is the holder of your loan at this point in time. What does that mean? I'm trying to think of it. Suppose instead of sending FDIC this letter about Security Pacific after he filed the action that's before us, the plaintiff had before that action brought a proper claim with the FDIC in the receivership proceeding based on MWAMU's misconduct and seeking to rescind the loan on the ground that his right to rescind had not been destroyed because MWAMU hadn't given him the proper notices. And suppose further that he eliminated the rescission problem of not tendering by tendering. Suppose he just brought in the $1.2 million, maybe from some other source he borrowed from or his own assets. What could the FDIC have done? The FDIC could have approved his claim. It could have found that MWAMU had in fact engaged in misconduct. And then as the TILA rescission regime contemplates. And then what? They say, yep, you're right, MWAMU violated TILA. Then what do they do? Do they take the $1.2 million that he's tendering or not? And what do they do about the foreclosure by whatever bank now has his deed of trust? I don't know what the FDIC would have done, and this is precisely the question that Wilner addressed when it talks about not speculating. But one thing the FDIC could have done. I'm not asking what they would have done. Yeah, so I think what the FDIC could have done is issued a declaration that it found, based on its jurisdiction over these claims arising from the acts or omissions of a failed bank. It could have reached a determination that MWAMU had in fact. Did they have the authority? I mean a court can issue a declaratory judgment, and that's going to have the practical effect of making everything proceed in accord with the court's view. But does the FDIC have that authority? Suppose they had said, yep, you're entitled to rescind. What happens? So I think the FDIC has the authority to adjudicate his claim and make a determination one way or the other. It could approve his claim. Yeah, but all that is so far is talk. Can they actually compel anything or do anything, or is anyone else forced to? Well, you aren't there at the time, right? Say that one more time. When he's exhausting, you're not there. Are you a party to that proceeding? No, I don't think so. So then if they said he could rescind, that would be rescinding with you, right? And then you would come back and you would say, whoa, whoa, whoa. You wouldn't say the FDIC could say he could rescind, would you? Well, so if the FDIC had made ñ I mean, let me take a step back. Tealer rescission, as the Court has explained, this Court and other courts after Jessanoski, it's meant to be a voluntary mutual process where a party rescinds and if the creditor agrees that they have the right to rescind, for example, during the three-day period. Well, sure. Righteous rescission is during the three days before you even got the money. You call the bank. You say, you know, I don't want to go through with it. And you both just tear up the papers and go away. Precisely. Or if you already got the money, you bring it back to them. Precisely. And then you all just walk away. So if what we're talking about is a scenario where someone has grieved this claim. The problem here is he didn't get his notices putatively. And if that happens, the rescission doesn't come so smoothly and rapidly. So courts have ñ let me answer that question two different ways, first legally and then what might have happened in this case. Courts have rejected the argument that any claims for non-monetary, declaratory, equitable relief can't be brought to the FDIC. And they've said all of those need to be grieved. The question of whether the FDIC could bind a third party was squarely presented in Willner. And the court said it doesn't matter. It's irrelevant to the question of whether you need to grieve, whether you need to bring your claim to the FDIC. Well, they said even if the FDIC cannot establish as a matter of race judicata that WAMU breached its duty. I don't think they speak in terms of preclusive effect. It wouldn't be binding, but it doesn't matter that it's not binding? Correct. I mean, they point to the very broad language of FIREE and they say any claim arising from any act or omission. But to go to your point, I don't know what would have happened, but if the FDIC made a determination that WAMU had in fact failed to provide those disclosures and Mr. Shah went to his then-possessor of the note and said, look, the FDIC said this and I contender, it is quite possible that the lender in those circumstances, the holder of the note would have said, all right, we're getting our money back. The FDIC has said that you didn't get the requisite number of disclosures. Let's do what TILA says and let's rescind voluntarily. I will dissolve my security interest tomorrow. And that would have avoided the need for any litigation in court, which is precisely what FIREE is meant to do. But they wouldn't have to do that. If the property values had gone up instead of down, they might want to say, no, no, you hold on to your $1.2 million. The property is worth $3 million now. It's a big boom where you bought your house and we're not going to let you rescind it. But that's not a basis to resist rescission. The only basis to resist rescission is whether there was something that gave rise to the extended three-year rescission rate. So if the dispute is resolved by the FDIC because they say, look, we looked at all of this. It's a three-year rescission rate, you said? Correct. The bank could say, well, the FDIC thought that WAMU hadn't given you the correct papers, but we think it did. Absolutely, and that's precisely what was presented in Long. There was a claim that went to the FDIC, and then the plaintiff borrower brought the claim both as against WAMU and JPMorgan Chase, and the district court resolved the claim. What I'm saying, just in response to your hypothetical, it's quite possible that the lender in those circumstances or the holder of the note would have said, this isn't a fight worth having. The FDIC has adjudicated this claim, which is what Congress envisioned the FDIC doing to ensure that after the catastrophe of a failed bank, the district courts weren't being deluged with these sorts of claims. And then they go to the current holder of the note and they say, look, the FDIC found that I hadn't gotten this from WAMU. So what you're saying is that you have to exhaust even if the FDIC can't do anything about it. If the FDIC cannot grant you the ultimate relief, yes. But if the claim relates to an act or omission of the failed bank, that's precisely what D2 provides. I'm sorry. Okay. I feel like I'm playing that double-dutch jump rope where I'm trying to jump in here. Sorry. Okay. You've explained some of the practical part of it, but I'd like to understand, so what is the status of the property now? I know that doesn't resolve the law on this, but what is happening in the real world here? My understanding, and you should certainly ask Mr. Shaw for confirmation, is that he has reentered bankruptcy. He's still in the house. He's reentered bankruptcy, and I believe that there's an order of sale. By December 31, 2019, he's required to sell the house. Okay. Are you receiving any payments? I don't believe any payments are being made. And how long have you owned the note? I think since it was securitized, it's been in various forms in the trust with different trustees. So it was first LaSalle Bank, then Bank of America, then U.S. Bank. Okay. All right. We've taken you over. Thank you, Your Honor. Thank you. All right. Mr. Shaw, we'll give you two minutes rebuttal. So I think we've focused the argument, so. Okay. I'm not a deadbeat. The only problem I have is this loan. The reason I'm in bankruptcy is because of this. If I were to be successful on a rescission, I could tender the value. The rear is just everything. It's no longer underwater. It never was underwater, okay? But I would address the one last point where you asked. So have you talked to them at all? Did you mediate this case with them at all? We mediated the case. Yes, we did. I'm just – I mean, it's not – we generally mediate cases. And if we feel that there's some way that people can – I mean, we're going to – we call the ball on the law. Okay? That's basically – and generally, no one ever likes what we say. But it's – that's – but we just have to follow whatever the law is. And we haven't conferenced about this, so I can't tell you what we're going to do. But that – but you mediated it in the Ninth Circuit? Is what? You mediated this in the Ninth Circuit? The Ninth Circuit, yes. Okay. Yes. All right. Okay. So the situation is – and what the defendant is referring to is Section double little I. That's what I call it for short. Okay? And it's the one that says any claim, then that's when it talks about the conduct of the bank. But there's two parts to that sentence. The first part is any claim. And the second part is it has to do with the conduct of the bank. Now, what I'm saying is this can't be a claim that the FDIC can – that can be submitted to the FDIC because the FDIC cannot resolve it. And a claim – But Congress didn't say that. I mean, they seem to say it still has to go to the FDIC. Maybe it will just be an advisory opinion or whatever you want to call it out of the FDIC. But for whatever reason, Congress apparently said that's what you've got to do. Before you come here. But there's case law that clarifies that. And it says a claim under FIREA is a claim that can be resolved by the FDIC. And this claim can't – maybe it can sort of kind of be resolved if they give an opinion and then everybody agrees. But they don't have the power to resolve it. That letter said that. Now, TILA rescission is a different thing. It's a statutory consumer protective statute to be interpreted broadly to protect the consumer. And it tells you how to rescind a loan. And it says you write a letter to the bank. And that's how you rescind. You write a letter and you rescind against the current holder. The current holder. Those are the people in the lawsuit. The Bank of America and U.S. Bank. The current holders. Washington Mutual is not in it. Chase is not in it. And that's why they said we don't have jurisdiction. Or we can't resolve this case for you. And if they can't resolve it, then it's not a claim under FIREA. It doesn't meet the definition of a claim. Now it would be futile. So what comes first? It's not a claim or it's futile. It's futile, so it's not a claim. I don't know. But I think they're kind of the same. All right. I think we're aware of both of your arguments. And we thank you both for your argument in this matter. And this will stand submitted. Thank you.
judges: Kleinfeld, Callahan, Nelson